UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM SHEPARD, JR.,

      Plaintiff,

vs.                                                Case No. 8:09-CV-2398-T-27TGW

FLORIDA POWER CORPORATION,

      Defendant.
_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendant's Motion to Enforce Mediated Settlement Agreement (Dkt. 41); and (2) Plaintiff's Motion to Set Aside Settlement Agreement (Dkt. 43), to which Defendant has responded (Dkt. 44). Upon consideration, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

Plaintiff filed suit against Defendant on November 24, 2009 and asserted claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as well as related state-law claims.

The parties participated in court-ordered mediation on September 29, 2010. Plaintiff was represented by his former counsel, Andrea Teves Smith. At the conclusion of the six (Dkt. 43 at 2) or nearly seven-hour (Dkt. 44 at 1) mediation conference, the parties, their respective counsel, and the mediator executed an agreement (the "mediated settlement agreement" [Dkt. 41-1]). The mediated settlement agreement provides in pertinent part that this matter will be dismissed with prejudice and Plaintiff will execute an appropriate settlement and release in a form reasonably

satisfactory to the parties, whereupon Defendant will pay Plaintiff an amount that neither party has disclosed to the Court.[1] The following day, the mediator reported that the case had been completely settled (Dkt. 37), and the Court entered a conditional dismissal order (Dkt. 38).[2]

After providing the ten-day notice required by Local Rule 2.03(b), Plaintiff's counsel moved to withdraw on October 26, 2010. (Dkt. 40)  Defendant states that, after Defendant sent Plaintiff's counsel a proposed "Confidential Settlement Agreement and General Release of All Claims," Plaintiff apparently ceased communication with his counsel, he did not sign a release, and he was observed near his former workplace wearing a placard or sandwich board reading "Support Case # 8:09-CV-2398-T-27TGW Against Progress Energy, 26 Year Employee, Heart Attack June 18, 2008 on the job, Terminated August 29, 2008, Wrongful Termination." (Dkt. 41 at 3). On November 4, 2010, Defendant moved to enforce the mediated settlement agreement.

Having obtained substitute counsel, Plaintiff moved to set aside the settlement agreement on grounds of duress and lack of capacity.  Plaintiff submits no evidence (*e.g.*, an affidavit or declaration by Plaintiff or his treating physician) in support of the motion. However, Plaintiff's new counsel argues that (1) at the end of the mediation conference, Plaintiff (who has a heart condition including blockage of four arteries) began to experience chest pain, a headache, and some faintness and dizziness; (2) Plaintiff was crying and had difficulty talking, and his former counsel made a remark to him whose substance cannot be discerned from the motion ("Plaintiff's [former] counsel said to the Plaintiff or [sic] that Plaintiff needed to go to his began his behind [sic] because he had

---

[1] The agreement contains a confidentiality provision prohibiting Plaintiff from disclosing the amount or other terms of the settlement. (Dkt. 41-1 ¶ 4).

[2] Plaintiff's former counsel, Ms. Smith, also states that at the mediation conference "the parties . . . agreed to a settlement." (Dkt. 40 at 1).

a bad heart" [Dkt. 43 at 2]) and thereafter acknowledged to Plaintiff's spouse that Plaintiff was "not okay," *id.*; (3) Plaintiff's former counsel responded to the spouse's expression of concern about Plaintiff's health by indicating (outside Plaintiff's presence) "that Plaintiff needed to sign the papers and get this behind him and will on [sic] with her [sic] life and get the stress behind him and to speak [sic] to the Plaintiff," *id.*; (4) after taking some additional medication, Plaintiff continued to experience chest pains; (5) after the mediator stated that Defendant was going to leave if Plaintiff did not accept the settlement, Plaintiff signed the agreement while "crying and holding his head down and not talking," *id.* at 3;[3] and (6) the settlement amount was "considerably less than what Plaintiff had discussed with Plaintiff's counsel," and was an amount that Plaintiff believes to be unfair, *id.*

Plaintiff argues that the settlement should be set aside because he was coerced by his attorney into signing an unfair settlement agreement. Additionally, Plaintiff asserts that the mediation agreement should be set aside "based upon issues of... mental capacity." (Dkt. 43 at 1). Defendant argues that Plaintiff merely regrets his voluntary decision to sign the settlement agreement.

## *Discussion*

A district court has jurisdiction to enforce a settlement agreement in a pending case,[4] including following a conditional dismissal order.[5] In substance, a party seeking enforcement of a

---

[3] Plaintiff's counsel does not state whether Plaintiff sought medical attention following the conclusion of the mediation conference.

[4] *See Kent v. Baker*, 815 F.2d 1395, 1399-1400 (11th Cir. 1987)

[5] *See Consolidation Coal Co. v. United States Dep't of Interior*, 43 F. Supp. 2d 857, 863 (S.D. Ohio 1999); *J & J Sports Prods., Inc. v. Chai*, No. 1:09-cv-00450, 2010 WL 2991479, at *1 (E.D. Cal. July 28, 2010) ("If a dismissal is not final, a district court has continuing jurisdiction to enforce, modify or vacate the settlement agreement.") (citing *Consolidation Coal*, 43 F. Supp. 2d at 863).

settlement agreement is requesting the equitable remedy of specific performance. *Ford v. Citizens and Southern Nat'l Bank, Cartersville*, 928 F.2d 1118, 1122 (11th Cir. 1991). "Under federal law, a district court has 'inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case.'" *Id.* at 1121 (quoting *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967)).[6] However, where there is a disputed issue of material fact as to the existence or terms of the agreement, an evidentiary hearing is required. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir.1994); *Batton v. City of Jasper, Ala.*, 354 Fed. App'x. 400, 401 (11th Cir. 2009).

A settlement agreement is a contract and, as such, its construction and enforcement are generally governed by state law.[7] Federal law requires that an employee's release of a Title VII claim be knowing and voluntary based on the totality of the circumstances. *See Myricks v. Federal Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n.15 (1974)).[8] However, absent claims of fraud or duress, a plaintiff who executes a settlement agreement pursuant to the advice of independent counsel is presumed to have executed the agreement knowingly and voluntarily. *Myricks*, 480 F.3d at 1041 (citing *Riley v. American Family Mut. Ins. Co.*, 881 F.2d 368, 373 (7th Cir. 1989).[9] "If a party to a

---

[6] The Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit made prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 & n.4 (11th Cir. 2000); *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987).

[8] *But cf. Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 n.2 (11th Cir. 1999) (11th Cir. 1999) ("This is not the applicable standard when reviewing a case in which the employee . . . was represented by an attorney who settled the matter on the employee's behalf.").

[9] *See also Baptist v. City of Kankakee*, 481 F.3d 485, 488 (7th Cir. 2007) ("Collateral arguments regarding the adequacy of counsel's advice cannot rebut this presumption.").

[federal] suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).

Under Florida law, "[a] party seeking to enforce a settlement agreement bears the burden of showing, by the preponderance of the evidence, that 'the opposing party assented to the terms of the agreement.'" *Clark v. School Bd. of Bradford County, Fla.*, No. 3:09-cv-901-J-34TEM, 2010 WL 4696063, at *2 (M.D. Fla. Oct. 13, 2010), *adopted*, 2010 WL 4694840 (M.D. Fla. Nov. 12, 2010); *see also Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002).

Florida courts favor enforcement of settlement agreements whenever possible. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). However, a court may decline to enforce a settlement agreement if the settlement agreement was procured through fraud or duress attributable to one of the contracting parties. *See Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1096 (Fla. 4th DCA 2001).

*Duress*

To set aside a settlement agreement based upon a claim of duress, the moving party must prove that "(1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper and coercive conduct over the moving party to effectuate the settlement." *Clark*, 2010 WL 4696063 at *3 (citing *City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. DCA 1981)).[10] Duress results from "an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make

---

[10] *See also Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. 3d DCA 2007) (duress requires proof "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party.").

a contract not of his own volition." *Id.*; *see also Anderson v. City of Crystal River*, No. 5:03-CV-296-OC-10GRJ, 2006 WL 1360906, at *3 (M.D. Fla. May 18, 2006). Generally, only improper influence from the other contracting party suffices to set aside a settlement agreement on the basis of fraud, duress or coercion. *See Anderson*, 2006 WL 1360906, at *3; *Vitakis-Valchine*, 793 So. 2d at 1096.[11]

Plaintiff does not allege any improper influence by any person other than his former attorney.[12] Although the unintelligibility of parts of Plaintiff's motion prevents certainty on this point, *see* Fed. R. Civ. P. 7(b)(1)(B); Local Rule 3.01(a), Plaintiff apparently alleges that, although recognizing that Plaintiff was "not okay," Plaintiff's former attorney advised Plaintiff to accept the settlement and sign the mediated settlement agreement. Plaintiff's mere dissatisfaction with the advice of his attorney cannot support a finding that his agreement to settle and release his claims was not knowing or voluntary. *See Myricks*, 480 F.3d at 1041 ("An employee's decision to consult an attorney before signing a clear release creates a presumption that the release is enforceable.") (citing *Riley*, 881 F.2d at 373) ("[A] plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress."); *see also Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007) ("[T]he adequacy or propriety of counsel's advice is irrelevant to the

---

[11] In *Vitakis-Valchine*, the Fourth District Court of Appeal recognized an exception to the general rule and held that duress imposed by a mediator could be a ground for setting aside a mediated settlement agreement. 793 So. 2d at 1096-99.

[12] Plaintiff does state that, near the end of the mediation conference, the mediator stated that Defendant was going to leave if Plaintiff did not accept the proposed settlement. (Dkt. 43 at 3). If Plaintiff means to suggest that Defendant's announcement of its intention to leave coerced Plaintiff into accepting the settlement, Plaintiff is mistaken. *See Kory*, 394 So. 2d at 498 ("[I]t is not improper and therefore not duress to threaten what one has a legal right to do.").

question of whether a settlement was knowing and voluntary.").

*Incapacity*

"To avoid a contract by reason of incompetency, a party must demonstrate that he lacked the mental capacity to enter into a contract at the time of the transaction." *In re Seminole Walls & Ceilings Corp.*, 366 B.R. 206, 232 (Bkrtcy. M.D. Fla. 2007) (citing *Parks v. Harden*, 130 So. 2d 626 (Fla. 2d DCA 1961)), *rev'd in part on other grounds*, 388 B.R. 386 (M.D. Fla. 2008). Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon his own free will. *See Travis v. Travis*, 87 So. 762, 763 (Fla. 1921); *Donnelly v. Mann*, 68 So. 2d 584, 586 (Fla.1953). Feebleness of body or mind does not, without more, create a presumption of incompetence or authorize a court to set aside a contract. *Barnett Nat. Bank of Jacksonville*, 74 So. 2d 647, 649 (Fla. 1954).

Plaintiff alleges that, owing to the stress created by the lengthy mediation conference, he was experiencing chest pains and related symptoms when he executed the settlement agreement, evidently on the advice of his attorney. Plaintiff does not allege facts showing that he could not understand the nature and effect of the agreement.[13] *Compare Crupi v. Crupi*, 784 So. 2d 611, 614

---

[13] Plaintiff alleges that the settlement amount was "considerably less than what Plaintiff had discussed with Plaintiff's counsel." (Dkt. 43 at 3). The Court will not construe this vague statement as an allegation that Plaintiff's former attorney misrepresented to Plaintiff the amount to be paid Plaintiff under the mediated settlement agreement. Therefore, if Plaintiff was able to read the one- and one-half page agreement (or to observe the settlement amount that appeared in the second paragraph of the agreement) or otherwise learn its contents, any mistake on his part as to the settlement amount provides no basis for rescinding the mediated settlement agreement. *See Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."); *Estate of Etting ex rel. Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558, 558 (Fla. 3d DCA 2004) (holding that the fact that the decedent was legally blind when she signed an arbitration agreement did not render the agreement invalid in the absence of evidence that she was coerced into signing it or prevented from knowing its contents).

(Fla. 5th DCA 2001) (evidence that party was very upset and anxious at mediation conference, despite having taken three Xanax pills, and felt pressured to sign the mediated agreement, was insufficient to warrant setting aside the agreement: "Otherwise, few, if any, mediated settlement agreements would be enforceable."). Nor does Plaintiff allege that Defendant or the mediator or both were aware of his distress and took advantage of it. *See Lopez v. Kempthorne*, No. H-07-1534, 2010 WL 4639046 at *4 (S.D. Tex. Nov. 5, 2010) (declining to set aside mediation agreement signed by plaintiff and her attorney despite plaintiff's statement that she experienced headache, anxiety, and disorientation at the mediation conference, where plaintiff did not even allege that she informed the mediator or defense counsel that she was ill or under duress). Above all, Plaintiff was represented by counsel throughout the mediation conference. Plaintiff apparently alleges that it was his attorney's pressure to settle that induced him to execute the agreement. However, Plaintiff's dissatisfaction with his attorney's advice or conduct does not demonstrate that he lacked capacity to execute the mediated settlement agreement.

In sum, Plaintiff presents no evidence of duress or incapacity and Plaintiff fails to allege facts that, if true, would support a finding that his execution of the agreement was not knowing and voluntary.

### *Conclusion*

For the foregoing reasons, Plaintiff's Motion to Set Aside Settlement Agreement (Dkt. 43) is **DENIED**.

Defendant's Motion to Enforce Mediated Settlement Agreement (Dkt. 41) is **GRANTED** in part as follows.

Within **thirty (30) days** of the date of this Order, Plaintiff shall execute a settlement and

release in the form contemplated by the parties' September 29, 2010 mediated settlement agreement. Failure to comply will result in the dismissal of Plaintiff's claims with prejudice.

Within **seven (7) days** of the date of this Order, Plaintiff shall file a response to Peterson & Myers, P.A.'s Motion to Adjudicate and Enforce Attorneys' Charging Lien (Dkt. 46) in accordance with the requirements of Local Rule 3.01(b).

Defendant's request for fees and costs (Dkt. 41 at 7; Dkt. 44 at 10) is **DENIED**.

**DONE AND ORDERED** in chambers this ___18th___ day of April, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record